IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

PAUL "PINO" GURULE,

        Petitioner,

v.                                            CIV 02-854 LH/KBM

ERASMO BRAVO, Warden, et al.

        Respondents.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

      Petitioner Paul Gurule filed this action seeking a petition for a writ of habeas corpus under 28 U.S.C. § 2254.  *Doc 1.*  Because he filed after the effective date of  Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), its standards[1] apply to this case.  *E.g., Paxton v. Ward,* 199 F.3d 1197, 1204 (10th Cir. 1999).  All of the issues can be resolved on the record, such that an evidentiary hearing is unnecessary.  *E.g., Trice v. Ward,* 196 F.3d 1151, 1159 (10th Cir. 1999), *cert. denied,* 531 U.S. 835 (2000); Rule 8(a), *Rules Governing Habeas Corpus Under Section 2254.*  For the reasons set forth below, I recommend that the petition be denied.  Because there is no constitutional right to counsel in habeas proceedings and because there is no reason to appoint counsel unless the case reaches the stage where an evidentiary hearing is required, I also recommend that Petitioner's motions for appointment of counsel *(Docs. 3, 12)* be denied.  *E.g., Swazo v. Wyoming Dept. of Corrections,* 23 F.3d 332 (10th Cir. 1994) (§ 2254 case).

---

[1]  Under AEDPA standards, a federal court cannot grant a writ of habeas corpus unless:  (1) the state court decision is "contrary to, or involved an unreasonable application of . . . Supreme Court" precedent; or (2) is "an unreasonable determination of the facts in light of the evidence presented."  28 U.S.C. §§ 2254(d)(1)-(2); *see also  Williams  v. Taylor,* 529 U.S. 362 (2000); *Van Woudenberg v. Gibson,* 211 F.3d 560, 566 & n. 4 (10th Cir. 2000), *cert. denied,*  531 U.S. 1161 (2001).

# I.  General Factual & Procedural Overview

New Mexico accused Petitioner Paul Gurule of criminal sexual penetration of a minor and other related offenses from June 1993 to July 1994.  The indictment contained a total of forty-six separate charges.  Defendant was a minor, sixteen and seventeen, at the time of the incidents.  Petitioner's mother operated a daycare facility from her home, and the eight-year old victim and her stepbrother[2] were among the dozen or so children in her care.  *See Answer, Exh. D* at 1-6; *id., Exh. F* at 23.[3]

The victim and her stepbrother testified to the incidents of abuse.  Specifically, the victim testified that Defendant frequently touched and/or raped her.  The victim's stepbrother testified that:  he witnessed three incidents; Defendant would ask him to "watch the door to the bedroom" while Defendant "acted like" he was having sex with the victim; and Defendant forced him to have sex with his stepsister on one occasion.  Neither the victim nor her stepbrother could recall specific dates.  The victim's mother supplied the dates during which her children attended daycare.  The victim's stepfather testified that he saw Defendant at the daycare center between fifty to sixty percent of the time.  *See Exh. D* at 2-4; *Exh. F* at 6.

After her stepson informed her in November 1995 of the abuse, the victim's mother contacted Child Protective Services.  She surprised the defense and the prosecution by testifying that she took the victim for a physical examination in January 1996.  The officer who investigated the allegations testified that he set up "safe house interviews" but had not arranged for a physical

---

[2]  I use the same characterization of the victim's sibling as the New Mexico Court of Appeals used.

[3]  Unless otherwise noted, all citations to exhibits are those attached to Respondents' Answer. *Doc. 10.*

examination. The prosecution's final witness was a psychologist who diagnosed the victim with post-traumatic stress disorder. *See Exh. D* at 3-4; *Exh. F* at 7.

Defendant's mother and stepfather testified on his behalf. Both testified that Defendant was living with his aunt and was not present in their house for the most part during the time in question. His mother also testified that the children were never left alone and were always in the presence of a child care worker. Defendant, who has a prior felony conviction for attempted sexual contact of a minor, also took the stand. He also testified that he was living elsewhere and that the children were supervised by three to four other child care workers. He admitted his prior conviction, but denied committing the offenses against the victim. *See Exh. D* at 6.

On July 23, 1998, the jury convicted Petitioner on a total of twenty-four of the counts: thirteen counts of criminal sexual penetration of a minor in violation of N.M. STAT. ANN. § 30-9-11; ten counts of criminal sexual contact of a minor in violation of N.M. STAT. ANN. § 30-9-13; and one count of contributing to the delinquence of a minor in violation of N.M. STAT. ANN. § 30-6-3. The jury was unable to reach a verdict on the other charges. *See Exh. A.*

The trial judge found Gurule was not amendable to treatment under the Juvenile Code because he was twenty-two at the time of sentencing. *See Exh. F* at 23; *Exh. G* at 18-19. On February 8, 1999, he sentenced Gurule to one hundred forty-two and a half years incarceration, and eleven days later denied a motion to reconsider the sentence. *See Exhs. A-D.*[4]

Represented by counsel, Petitioner unsuccessfully pursued a direct appeal and the New Mexico Supreme Court denied certiorari on July 26, 2000. *See Exhs. D-I.* His conviction

---

[4] Unless otherwise noted, all citations to exhibits are those attached to Respondents' Answer. *Doc. 10.*

therefore became final on October 24, 2000. *See* 28 U.S.C. § 2244(d)(1)(A); *Rhine v. Boone,*

182 F.3d 1153, 1155 (10th Cir. 1999), *cert. denied,* 528 U.S. 1084 (2000). His one-year

limitations period ran without ceasing until Petitioner filed his pro se state habeas petition on July

19, 2001. *Exh. K.* Following an order for briefing and a review of the file, the trial judge denied

the petition by adopting the position of the State in its responsive brief. *See Exhs. L-N.* The

order denying state habeas relief was entered April 23, 2002, and the New Mexico Supreme

Court denied certiorari on June 3, 2002. *Exhs. N, P.*

Petitioner then timely initiated this action by filing this federal petition on July 17, 2002.

*Doc. 1.* He raises seven separately-numbered grounds for relief, each of which consists of

numerous subparts. The majority of his arguments were raised in the state proceedings. Others

are raised for the first time in the federal petition.

## II. Exhaustion & Procedural Default

I have carefully compared all of the issues raised on direct appeal, in the state habeas

petition, and the petition before me. In denying the state habeas petition, the trial judge held that

"virtually all material claims set forth in the [state petition] were made and argued before the New

Mexico Court of Appeals." *Exh. N* at ¶ 6. Despite the trial judge's assertion to the contrary, I

find that only four of the nineteen issues[5] petitioner raised in his state petition were raised on

direct appeal. Construing the state petition liberally, Gurule claimed: (1) his sentence was

disproportionate; (2) his sentences for criminal sexual penetration must run concurrently and

failure to do so violates double jeopardy; (3) the prosecution failed to follow the trial court's

---

[5] By my count and omitting duplications, Petitioner raised nineteen issues in his state habeas. *See Exh. K.*

rulings by allowing his prior conviction to be introduced; and (4) "outside influences," presumably mention of Defendants gang membership, denied him a right to an impartial jury. *See Exh. K* (Claim I, ¶¶ 3-5; Claim II, ¶¶ 2, 4, 6; Claim III, ¶ 3; Claim IV, ¶ 1).

In raising these four claims, Petitioner resurrected claims that his trial attorney raised in the docketing statement but that appellate counsel waived by failing to include them in the brief in chief. *See Exh. D* (issue 6 – trial court erred in denying motion in limine re: gang membership; issue 7 – trial court erred in denying motion in limine re: prior conviction; issue 11 – sentences for DSP should to run concurrently; issue 13 – disproportionate sentence); *compare Exh. F.* In New Mexico, although assignment to the general calendar means that appellate counsel "may raise issues in addition to those raised in the docketing statement," N.M. Rule 12-213(A)(1), failure to again raise claims in the brief in chief on appeal renders those issues abandoned, *Maes v. Thomas,* 46 F.3d 979, 986 (10th Cir.), *cert. denied,* 514 U.S. 1115 (1995) (and cases cited therein).

Neither the State nor the trial judge treated the four issues as abandoned. The State responded to these four issues on the merits and the trial judge incorporated that rationale by reference in denying the state habeas petition. The State did not respond to all of the nineteen claims, however, thereby leaving some the issues without a decision on the merits.

I must review issues for which there is no decision independently. *See Battenfield v. Gibson,* 236 F. 3d 1215,1220 (10th Cir. 2001); *Aycox v. Lytle,* 196 F. 3d 1174, 1177-78 (10th Cir. 1999). In addition, by addressing the four resurrected issues on the merits, they are not procedurally defaulted because there is no "independent" basis for the default. *See, e.g., Ylst v. Nunnemaker,* 501 U.S. 797, 803-04 (1991); *Klein v. Neal,* 45 F.3d 1395, 1398-99 (10th Cir. 1995); *Vernon v. Williams,* 208 F.3d 228, 2000 WL 286157 (10th Cir.), *cert. denied,* 531 U.S.

1039 (2000). Finally, Petitioner raises new issues in his federal habeas petition, so those issues are technically unexhausted. Nevertheless, this court has the authority to deny unexhausted claims that are without merit. *E. g., Van Woudenberg,* 211 F. 3d at 569; *Brown v. Shanks,* 185 F. 3d 1122, 1123 (10th Cir. 1999); 28 U. S. C. § 2254( b)( 2). I elect to do so rather than require additional useless litigation in the state courts. *Grandberry v. Greer,* 481 U. S. 129, 133 (1987).

## III. *Strickland* Standard

Rather than taking the issues in the order presented by Petitioner, I arrange and analyze them generally in the order of the trial proceedings. Because so many of Petitioner's ineffective assistance of counsel claims overlap other issues, I set out the standard of review for such claims at the outset.

The two-prong test announced in *Strickland v. Washington,* 466 U.S. 668 (1984) governs ineffective assistance of counsel claims. *E.g., Mayes v. Gibson,* 210 F.3d 1284, 1288 (10th Cir.), *cert. denied,* 531 U.S. 1020 (2000). Gurule must first show that counsel's representation was "objectively unreasonable." *Clayton v. Gibson,* 199 F.3d 1162, 1177 (10th Cir. 1999), *cert. denied,* 531 U.S. 838 (2000). In doing so, he must overcome the "strong presumption" that counsel's conduct falls within the "wide range" of conduct that is considered to be trial strategy and is deemed "reasonable professional assistance." To be constitutionally ineffective, counsel's conduct "must have been completely unreasonable, not merely wrong." *Moore v. Gibson,* 195 F.3d 1152, 1178 (10th Cir. 1999), *cert. denied,* 530 U.S. 1208 (2000); *see also Hawkins v. Hannigan,* 185 F.3d 1146, 1152 (10th Cir. 1999).

Petitioner must also establish "prejudice" – absent counsel's errors, there is a "reasonable probability" that the outcome of the trial would have been different. *Moore,* 195 F.3d at 1178.

"Reasonable probability" means that confidence in the outcome is undermined. *Foster v. Ward,* 182 F.3d 1177, 1185 (10th Cir. 1999), *cert. denied,* 529 U.S. 1027 (2000). An ineffective assistance of counsel claim fails if either of the *Strickland* prongs are not met. It is entirely appropriate for a habeas court to analyze the prejudice prong first and exclusively, if that is the easier course. *E.g., Scoggin v. Kaiser,* 186 F.3d 1203, 1207 (10th Cir.), *cert. denied,* 528 U.S. 953 (1999); *Cooks v. Ward,* 165 F.3d 1283, 1292-93 (10th Cir. 1998), *cert. denied,* 528 U.S. 834 (1999).

# IV. Pretrial Issues

### A. No Constitutional Right To Bench Trial

Just before the parties were to begin selecting a jury, the defense told the trial judge that Petitioner wished to waive a jury trial. The prosecution had no objection to trying the matter before the court. However the trial judge denied the request stating:

> ***Counsel, I still feel that Mr. Gurule is entitled to a jury trial and it[']s one of his constitutional rights and can be waived only under the most, I think, compelling circumstances.*** After careful examination of all the facts, and I think to approach me ten minutes before trial before the jury is going to be selected is an issue that could if he is found guilty by me, is one where he could claim duress and involuntariness with waiver of a jury trial. Quite frankly, I think that would be inappropriate. There are other reasons that I feel are taking part in my ruling but I am going to go ahead and deny the motion for waiver of a jury trial.

*Exh. G* at 6. (quoting from tape; emphasis added).

Habeas relief cannot be granted absent a violation of the federal constitution. Like FED. R. CRIM. P. 23, New Mexico Rule 5-605 requires consent of the prosecution and approval by the court for a criminal defendant to waive a jury trial. The defense argued in its brief in chief that

denial of a bench trial constituted error in state procedure and fundamental fairness, while the docketing statement cited the federal constitution. *See Exh. F* at 14-16; *Exh. D* at 11 ("U.S. Const. Amends. V, XIV"). The New Mexico Court of Appeals did not address the federal constitutional issue, but did not rely on a procedural default for its failure to do so.[6] Rather, it found no state law addressing the power of a trial judge to "veto a defendant's waiver" and held that "the plain language of the rule gives the trial court discretion to deny a request even if the prosecution consents." *Exh. H* at 8. Therefore, I review this claim independently. *See Doc. 1* (Claim 7)

While there is a constitutional right to trial by jury, there is no correlative constitutional right to waive trial by jury and insist on a bench trial. Consistent with due process, a state may condition the waiver on the consent of the prosecution and the trial judge. *Singer v. United States,* 380 U.S. 24, 35-36 (1965) ("if either refuses to consent, the result is simply that the defendant is subject to an impartial trial by jury – the very thing that the Constitution guarantees him"); *Williams v. DeRobertis,* 715 F.2d 1174, 1178 (7th Cir. 1983) ("a defendant does not have a constitutional right to waive a jury trial and insist upon a bench trial; either the court or the prosecutor may veto his request for a bench trial."), *cert. denied,* 464 U.S. 1072 (1984).

In the case before the Supreme Court in *Singer,* the defendant argued that "there might arise situations where 'passion, prejudice . . . public feeling' or some other factor may render impossible or unlikely an impartial trial by jury." 380 U.S. at 37-38. The court did not address the argument because the defendant only argued that he wanted a bench trial to "save time." *Id.* at 37. The *Singer* Court, therefore, specifically did "not determine . . . whether there might be

---

[6] *See* discussion *supra,* at section II.

8

some circumstances where a defendant's reasons for wanting to be tried by a judge alone **are so compelling** that the Government's insistence on a jury would result in the denial to a defendant of an impartial trial." *Id.* (emphasis added). Thus, although it is unclear from the record whether Gurule's trial judge was considering the issue as a matter of federal constitutional law, the emphasized portion of his remarks above show that he considered the Supreme Court's cautionary note in *Singer.*

Here, Petitioner argues that the sheer number of counts against him and the graphic nature of the testimony were inflammatory and the obvious reason why he wanted to opt for a bench trial. *See Exh. F* at 15-16; *Exh. I* at 8. However, gruesome facts as well as prior convictions are insufficient to fall within the ostensible "compelling circumstances" exception mentioned in dicta in *Singer.* The Fourth Circuit rejected such an argument stating:

> Van Metre asserts that the details of his crime are so gruesome and
> that the presentation of the collateral crimes against Yohe are so
> confusing as to require a bench trial to guarantee an impartial
> verdict based upon the evidence rather than emotion. We disagree.
> Van Metre's actions, while heinous, unfortunately were no more
> egregious than many other cases involving murder, kidnapping, or
> sexual assault. Federal and state juries are entrusted with rendering
> just verdicts in cases involving child molestation and incest, torture,
> mayhem, and multiple murders. We also reject the assertion that
> the admission of Van Metre's prior bad acts precluded a fair verdict
> . . . .

*United States v. Van Metre,* 150 F.3d 339, 353-54 (4th Cir. 1998).

In an unreported decision, the Tenth Circuit held that a trial judge did not err in denying a bench trial even though the prosecution agreed to the waiver. *United States v. Gore,* 1997 WL 732519 *2 (10th Cir. 1997). The case involved a felon who robbed a bank with a firearm. The defendant moved waive jury trial on the felon-in-possession count on ground that prior felony

conviction would prejudice his defense on bank robbery charge.  In so holding, the Tenth Circuit

cited a Sixth Circuit decision for the general proposition that "because [the] trial court bears

substantial responsibility for jealously preserving jury trials, the constitutionally preferred method

of disposing of criminal cases, [a] trial court should not lightly approve trial waivers."  *Id.*[7]  It

cited a Third Circuit decision that found no abuse of discretion in denying a bench trial "because

[the] court anticipated trial would include credibility determinations best left to [a] jury."  *Id.*[8]

And it also cited Seventh Circuit decisions that hold prior convictions do not qualify as

"compelling circumstances".  *Id.*[9]

As in the *Van Metre* case, here there is no indication that the jury was other than impartial.

Indeed, their inability to reach a verdict on almost half of the counts evidences that they were

conscientious.  Thus, assuming that the dicta in *Singer* establishes an exception to the rule that

there is no constitutional right to a bench trial, the trial judge did not violate due process in

denying Petitioner's motion.

For the same reason, if the trial judge erred as a matter of state law, Petitioner is not

entitled to habeas relief.  *E.g., Pulley v. Harris,* 465 U.S. 37, 41 (1984) ("A federal court may not

issue the writ on the basis of a perceived error of state law."); *Revilla v. Gibson,* 283 F.3d 1203,

1212 (10th Cir. 2002) ("When, as in this case, no particular constitutional guarantees are

---

[7]  Citing *United States v. Martin,* 704 F.2d 267, 272 (6th Cir. 1983).

[8]  Citing *United States v. Clapps,* 732 F.2d 1148, 1151-52 (3rd Cir. 1984), *overruled in part on other grounds by McNally v. United States,* 483 U.S. 350 (1987).

[9]  Citing *United States v. Clark,* 943 F.2d 775, 777, 784 (7th Cir. 1991), *cert. denied,* 509 U.S. 926 (1993), and *United States v. Kramer,* 355 F.2d 891, 899 (7th Cir.), *decision vacated in part on other grounds,* 384 U.S. 100 (1966).

implicated, such evidentiary objections merely raise questions of state law and, therefore, are

cognizable on habeas only if the alleged error was 'so grossly prejudicial [that it] fatally infected

the trial and denied the fundamental fairness that is the essence of due process.'") (citations

omitted).

### B. Failure To Negotiate A Plea

Gurule argues that counsel was ineffective in failing to negotiate a plea. *Exh K* (Claim II,

¶ 2). This assertion is entirely speculative. There is no evidence that the government was willing

to negotiate a guilty plea or that his sentence would have been different if he had entered a guilty

plea. *See United States v. Boone,* 62 F.3d 323, 327 (10th Cir.), *cert. denied,* 516 U.S. 1014

(1995). Indeed, Petitioner's appellate counsel noted that "the State had taken the position of no

plea discussion with Mr. Gurule at all during the course of the case when such discussions were

mentioned by Mr. Gurule's counsel." *Exh. F* at 18. More importantly, this assertion is

diametrically opposed to his claim of innocence. Accordingly, counsel was not ineffective in

failing to negotiate a plea, nor has Petitioner shown prejudice.

### C. Brady Issue

In his state habeas petition and here, Gurule claims that the prosecution failed to "disclose

all of the mitigating and exculpatory evidence of the victim." *See Exh. K* (Claim II, ¶¶ 4); *Doc. 1*

(Ground 3, ¶¶ 1, 2, 5, 6). By this he means to suggest that the victim's father had assaulted her

"mentally and physically." *Exh. K* (Claim II, ¶ 5); *Doc. 1* (Ground 3, ¶ 5). In related arguments,

he maintains that counsel was therefore ineffective in failing to: raise the "*Brady*" issue; failing

call the witnesses who could have "exculpated" him; and impeach the victim's mother. *Exh. K*

(Claim II, ¶ 5); *Doc. 1* (Ground I, ¶¶ 4, 6). For the first time, he also claims that counsel failed to

"investigate all others accused by" the victim. *Doc. 1* (Claim II, ¶ 15).[10]

There are a number of reasons why these related claims fail. First, in support of his claim both here and in the state proceedings, Petitioner references affidavits and documents concerning where he lived during the relevant time frame. These are discussed in more detail in the next section, but for the purposes of the *Brady* claim are plainly irrelevant to his suggestion that the victim's father assaulted her.[11]

Also, Petitioner must show three things to establish that a *Brady* violation violates his constitutional rights. He fails at each turn.

First, he must show that the undisclosed evidence was exculpatory or impeaching. *E.g., Strikler v. Greene,* 527 U.S. 263, 281-82 (1999). Petitioner's bald and conclusory assertion that the victim's father mental and physically abused her is insufficient to establish that the information is exculpatory or impeaching. *E.g., Hatch v. Oklahoma,* 58 F.3d 1447, 1469 (10th Cir. 1995) ("In order to warrant relief, or, as an initial matter, even an evidentiary hearing, a habeas corpus petitioner must allege sufficient facts to establish a constitutional claim.") (internal quotations omitted), *cert. denied,* 517 U.S. 1235 (1996).

Even if I construe the allegation liberally and stretch Plaintiff's assertion to encompass a suggestion that the victim's father sexually assaulted her, he fails to meet the second requirement that the State suppressed the evidence. As described in more detail below, in the ineffectiveness impeachment section, the victim's "safe house tape," according to the docketing statement filed

---

[10]  For ease of reading, I correct spelling and grammar in direct quotes.

[11]  The State did not address this assertion in the state habeas proceedings, other than to point out the irrelevance of the affidavits and documents. *Exh. M* at 6-7.

by defense counsel, "contained prejudicial matters which included . . . references to other sexual misconduct performed on the victim by other persons." *Exh. D* at 3. Since defendant's counsel was aware by the tape that others may have sexually abused the victim, there can be no finding that the prosecution "suppressed" the evidence.

Finally, Petitioner must show "prejudice" or "materiality." The "question is not whether the defendant would have more likely than not received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Strickler,* 527 U.S. at 289-90. Evidence that the victim's father sexually abused her in some fashion of is not inconsistent with Gurule also having done so. Also, it is by no means clear that the evidence would have been admissible New Mexico's "rape shield" law since evidence of prior sexual acts generally is not admissible and alone is not sufficient to show a motive to fabricate. *See State v. Johnson,* 123 N.M. 640, 649, 944 P.2d 869, 878 (N.M. 1997). Thus, Petitioner has also not established that the allegedly "favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Strickler,* 527 U.S. at 289. Accordingly, I find that the *Brady* and related ineffectiveness issues are without merit.[12]

---

[12] At trial defense counsel moved to dismiss the charges because the victim's mother testified that she had the victim tested for sexually transmitted diseases. The tests were negative. The State was as surprised as the defense at this testimony and tracked down the report. The test had been performed two and a half years after the incidents in question and only a swab was taken. There was no internal examination. Defense counsel spoke with the doctor who conducted the test, who reported that negative results would be expected in light of the long delay. The trial court denied the motion. *See Exh.* G at 9-10. Appellate counsel argued that because the tests were negative, they were thus exculpatory and should have been disclosed by the prosecution. *See Exh. F* at 16-18. The New Mexico Court of Appeals held that denial of the motion to dismiss was not erroneous because "there is no evidence that the State intentionally deprived Defendant of the evidence," "as soon as the parties became aware that such an examination had been performed, they contacted the physician and she provided her report," *Exh. H* at 11, and "the medical

## D. Failure To Investigate Witnesses

Also relying on the above affidavits and documents concerning his whereabouts, here and in the state proceedings, Petitioner argues that counsel was ineffective in failing to investigate what witnesses would say and to arrange for them to testify at trial. He asserts this violates counsel's duty of loyalty because the witnesses would have provided a "meritorious defense." *Exh K* (Claim II, ¶¶ 2, 7, 11, 13); *Doc. 1* (Claim I, ¶¶ 2, 5, 8, 12, 13, 16).

One of the documents Petitioner submits appears to be a November 9, 1993 police report. It indicates that Petitioner's mother stated that Gurule "joined a gang called the WestGate Creep Dogs, a branch of the Los Angeles-based Creeps" and was having "temper tantrums, stealing from us, lying, and finally leaving" around "the 28th of October." *Doc. 1*, Exh. A. The other document is a May 15, 2001 form from Qwest Communications denying Petitioner's "subpoena" for his telephone records. Gurule sought to establish when a particular telephone was connected and disconnected and the billing address for the account, during the time frame when the incidents occurred. *Id.*, Exh. B. All of the affidavits are identical in relevant part, saying that the affiant is willing and able to testify to Petitioner's "whereabouts from July 1, 1993 to June 9, 1994." *Id.* (remaining exhibits, duplicately labeled, Exhs. A-K).[13]

In connection with the July 1, 1993 to June 9, 1994 time frame, *see Exh. H* at 13, the Court of Appeals stated that:

---

examination was not material evidence" due to the "significant lapse of time," *id.* at 12.

Petitioner does not mention the negative test in connection with this issue. Even assuming he meant to, I find no merit to the contention for the same reasons as the Court of Appeals and under the discussion of federal constitutional standards above.

[13] All of these documents and affidavits are also attached to Petitioner's traverse. *Doc. 11*.

> Defendant testified that he was only living in his mother's home for "a couple of months" during the charged period and otherwise lived with his aunt because of an argument with this mother. Defendant's mother testified that Defendant was not living at her home during the charged period except for a visit in December and two weeks after May. Defendant's stepfather testified that Defendant was at home "off and on" at the beginning of the school year in 1993, but left to live with his aunt and, apart from a visit before Christmas, returned home eleven moths later.

*Id.* at 3. These findings are wholly unrebutted (much less "clearly and convincingly" rebutted) by Petitioner and thus are entitled to a presumption of correctness. *See* 28 U. S. C. § 2254 (e)(1).

"[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland,* 466 U.S. at 691. The constitutional requirement of effective assistance, however, is not designed to enforce "Canons of Legal Ethics." *Mickens v. Taylor,* ___ U.S. ___, 122 S. Ct. 1237, 1246 (2002). "In giving shape to the perimeters of this range of reasonable professional assistance, *Strickland* mandates that '[p]revailing norms of practice as reflected in American Bar Association Standards and the like . . . are guides to determining what is reasonable, but they are only guides.'" *Nix v. Whiteside,* 475 U.S. 157, 165 (1986).

The affidavits and documents Petitioner submits at best are merely cumulative of what he and his family testified to at trial. Since the affiants provided no specific information, I cannot tell whether their testimony would have contradicted what Petitioner and his family told the jury, whether the affiant would have made a credible witness, or whether the affiant risked exposing

Petitioner's gang affiliation, a fact that defense counsel wanted to keep from the jury.[14] Since

testimony of Petitioner's limited contact with the daycare facility was before the jury, and because

the jury only reached a verdict on about half of the counts, I find counsel was neither ineffective

nor disloyal, and Petitioner cannot establish the requisite prejudice. Therefore, this claim is

without merit.

## V. Trial Issues

### A. Impartial Jury

Both here and in the state court habeas proceedings, Petitioner claims, in conclusory

fashion, that "inadequate voir dire" and "outside influence from sources of opinion" deprived him

of his right to an impartial jury. *Doc. 1* (claim 5, ¶¶ 1, 3). "These conclusory allegations,

however, are insufficient to warrant habeas relief." *Humphreys v. Gibson,* 261 F.3d 1016, 1022

n.2 (10th Cir. 2001). Furthermore, by adopting the position taken by the State in the state habeas

proceedings, the trial judge's reasoning thus included the factual assertions that: "[t]he jury was

questioned during voir dire and none indicated hearing about the case" and "[t]here is no evidence

that any of the actual jurors were ever influenced to the slightest degree by anything other than

the evidence." *Exh. M* at 7. The unrebutted factual finding is entitled to a presumption of

correctness. *See* 28 U. S. C. § 2254 (e)(1).

Petitioner also asserts that "the right to poll the jury is a substantial right" and that failure

to poll the jury is "per se, error requiring reversal." *Id.* (claim 5, ¶ 4). He raised the issue in his

---

[14] Defense counsel filed a motion in limine to "prevent the state's witness from testifying about the defendant's alleged gang membership and gang gestures," *Exh. D* at 9 (issue six), which was denied, and the victim's brother was permitted to "refer to the Defendant's alleged gang membership and use of gang gestures . . . since he personally observed them," *id.* at 2. As discussed later, counsel did not use a "safe house" videotape that also contained gang references.

state habeas as well.  *Exh. K* (Claim IV, ¶ 4).  However, the state did not address it in its pleading so there is no decision on the issue, *see Exh. M* at 7-8, even though the trial judge plainly rejected all of the claims.

As a district court recently held,

> **the United States Supreme Court has never recognized a constitutional right to have a jury polled**; its rulings in this area have been limited to analyzing whether posing certain questions to a jury can be coercive.  *See, e.g., Lowenfield v. Phelps,* 484 U.S. 231 (1988).  Given that the federal courts have not enunciated a clear standard on this issue, this Court concludes that the state adjudication of the claim did not result in a decision that was contrary to, or an unreasonable application of, federal law as established by the Supreme Court.  Finally, the Court rejects petitioner's argument that trial and appellate counsel were ineffective for failing to raise this issue.

*Laird v. Horn,* 159 F. Supp.2d 58, 90 (E.D. Pa. 2001) (emphasis added); *c.f., Trujillo v. Williams,* 22 Fed.Appx. 995, 2001 WL 1632636 (10th Cir. 2001) (unpublished opinion denying certificate of appealability in case where petitioner claimed counsel was ineffective for failing to poll jury), *cert. denied,* 122 S. Ct. 2634 (2002).  Because there is no right of constitutional dimensions implicated by a failure to poll, and because there is no factual basis for concluding there was any outside influence, Petitioner does not state a claim for habeas relief based on a denial of a fair trial.  *See Tyler v. Nelson,* 163 F.3d 1222, 1229-30 (10th Cir. 1999).

## B.  Sufficiency of Evidence

The Tenth Circuit has not resolved whether sufficiency of evidence claims are considered questions of law or fact under AEDPA.  *Wright v. Hines,* ___ Fed.Appx. ___, 2002 WL 1486575, *1 (10th Cir. 7/12/02).  Nevertheless, the relevant inquiry is whether, after viewing all of the evidence "in the light most favorable to the prosecution, *any* rational trier of fact could have

found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319 (1979) (emphasis original); *see also Wright,* 2000 WL at *1. The court can neither reweigh the evidence nor substitute its judgment for that of the jury. *E.g., Wingfield v. Massie,* 122 F.3d 1329, 1332 (10th Cir. 1997), *cert. denied,* 523 U.S. 1005 (1998). This is the same standard to be applied by the New Mexico appellate courts for a sufficiency of the evidence claim, and the one identified by the state court in this case. *See Exh. H* at 12-13 (quoting *State v. Garcia,* 114 N.M. 269, 274, 837 P.2d 862, 867 (1992), which also states "the test to determine the sufficiency of evidence in New Mexico . . . is the same as enunciated in *Jackson*;" and State v. *Hernandez,* 115 N.M. 6, 26, 846 P.2d 312, 332 (1993), which in turn cites another state decision that contains the same quote as *Garcia, see State v. Sutphin,* 107 N.M. 126, 131, 753 P.2d 1314, 1319 (N.M. 1988)).

Here and on direct appeal, Petitioner asserts that, lacking any direct "scientific evidence whatsoever," the evidence introduced was insufficient to convict him of criminal sexual penetration because the victim could not pinpoint the time during which the events took place. *Doc. 1* (Claim 6 & ¶ 1); *see also Exh. D* at 5; *Exh.* F at 18-20. The New Mexico Court of Appeals rejected the claim, finding:

> Defendant's indictment stated that the CSP occurred over an eleven-month period from July 1, 1993 to June 9, 1994. Defendant argues that the child and her stepbrother could not state with precision when the alleged criminal conduct occurred. He argues that only by drawing together the testimony of the child, her mother, stepfather, and stepbrother, might a person vaguely conclude that the conduct occurred during the charged period. Consequently, Defendant argues, because the period of the charged acts constitutes an element of the offense, there was insufficient evidence to support the convictions. We disagree.

Although the child could not remember when she began attending the day care center, she remembered that she left when she was seven or eight. Her mother testified that the child and her stepbrother attended the center from January 1989 until June 1994. The child testified that she was born on May 22, 1986. She also testified that during the time she was at the day care center, and during the last two years before she left, Defendant touched her vagina, her anus, and her chest more times than she could count, more than fifty times.

The child testified that while she attended the day care center, Defendant penetrated her vaginally and anally and made her perform fellatio. The child testified that the vaginal penetration occurred once or twice a week from when she was about five years old, that the fellatio occurred as often as twice a week during the last two years she was at the day care center, and that the anal penetration occurred about twice a month during the last two years she was at the day care center. The child's stepbrother testified that on two or three occasions Defendant told him to watch the door while Defendant "acted like he was having sex" with his stepsister, but did not penetrate her. The stepbrother also testified that on one occasion, Defendant forced him to vaginally penetrate his stepsister. Both children were able to describe and to draw the locations where the acts took place and describe the events that occurred and their frequency although they could not remember the dates.

* * * * *

In [*State v. Altgilbers,* 109 N.M. 453, 786 P.2d 680 (Ct. App. 1989), *cert. denied,* 109 N.M. 419 (N.M. 1990)], as in this case, "the victims gave specific accounts of the acts of CSP and CSC, and the locations in which the acts occurred (bedroom, bathroom, etc.). They simply could not provide specific dates, testifying only that the acts occurred two or more times per week." *Id.* [at 471, 786 P.2d at 698].

We upheld the verdict on each count in *Altgilbers* because "the evidence could convince a reasonable person beyond a reasonable doubt that defendant committed the charged offense during the alleged period." *Id.* Similarly, in this case, the jury could reasonably infer from the evidence before it that three acts of vaginal penetration, ten acts of fellatio, ten acts of sexual contact, and one act of contributing to the delinquency of a minor occurred

between July 1, 1993, and June 9, 1995. Thus, the evidence was
sufficient, and we uphold the jury verdict.

*Exh. H* at 13-16.

In the section of its opinion addressing jury instructions, the Court of Appeals found:

> The child testified that she had been penetrated, and Defendant did
> not present evidence that he only touched the child and did not
> penetrate her. Defense counsel asked the child on cross-
> examination whether she had only been touched rather than
> penetrated. The child maintained that she was penetrated on
> numerous occasions. . . . The child's testimony sufficiently
> distinguished occurrences of penetration from occurrences of only
> touching. Defendant took the position that these events never
> occurred rather than claiming he only touched the child without
> penetrating her. He stated that he had only lived at his mother's
> house for a short period of time during the eleven-month period
> during which the events allegedly occurred.

*Id.* at 5-6.

Despite the absence of forensic evidence, the victim testified to the acts of penetration,

their frequency, and that they occurred during her last two years at daycare. Her stepbrother

corroborated her testimony. Her mother pinpointed the dates that her children were in daycare.

While Defendant denied committing the acts, the evidence from the victim and her stepbrother

was sufficient to establish that criminal sexual penetration occurred and there was no evidence

contradicting when the children were in daycare. *See e.g., Payne v. Ward,* 21 Fed.Appx. 852,

2001 WL 1334701 *2 (10th Cir. 2001) ("Mr. Payne contested proof of penetration. The district

court noted, however, that the prosecution introduced the victim's testimony; the victim, a child,

testified that Mr. Payne would 'stick his private in mine.'. . . Thus the Oklahoma Court of

Criminal Appeals reasonably rejected Mr. Payne's argument that the prosecution introduced

insufficient evidence to sustain Mr. Payne's conviction for first- degree rape.").

Although Defendant denied being at his mother's home during the entire period, he and his family testified that he was there for a portion of the time. His stepfather "testified that Defendant was at home "off and on" at the beginning of the school year in 1993, but left to live with his aunt, and, apart from a visit before Christmas, returned home eleven months later." *Id.* at 3. Again, the jury's inability to reach a decision on almost half of the counts indicates that they considered the testimony that Defendant did not reside at his mother's home continuously throughout the entire period in question. Accordingly, I do not find the Court of Appeals decision on sufficiency unreasonable or contrary to *Jackson*.

### C. Defendant's Conviction

Petitioner claims that the prosecution engaged in misconduct by failing to follow the rulings of the trial court regarding prior convictions, apparently in reference to his prior conviction for attempted sexual contact of a minor. *Doc. 1* (Claim 3, ¶ 3). He raised the same claim in state habeas to which the State responded that it "exactly followed the Court's ruling . . . impeach[ing] only with the date, the fact that it was a felony, and that it was in Sandoval County. Nothing impermissible was elicited or argued." *Exh. M* at 7. These factual findings are wholly unrebutted, *see* 28 U. S. C. § 2254 (e)(1), and dispositive of the claim.

### D. IAOC – Impeachment Of Witnesses

Petitioner faults counsel in failing to impeach witnesses. Specifically, he argues that counsel failed to: "dispute whether children are, in fact, developmentally capable of testifying in courtroom proceedings;" *id.,* ¶ 10; *see also id.* (Claim 4, ¶¶ 1, 2); "object to the doctors who had no expertise in child abuse;" *id.* (Claim 1, ¶ 17); "attack the credibility of the prosecution witnesses by using videotapes;" *Doc. 1* (Claim 1, ¶ 9); or "elaborate about victim's mother's

knowledge about victim's past tragedies between her father's assaults upon her;" *id.* (Claim 1, ¶ 6). The videotape issue was raised on direct appeal in the brief-in-chief as an ineffectiveness claim. The capacity of children to testify was raised in the state habeas proceedings and addressed on the merits in the state's responsive brief. The doctor and mother impeachment issues are raised for the first time in the federal petition.

## (1) Capacity of Children

Under New Mexico Rule 11-601 and 11-602, every person with personal knowledge is competent to testify. Age alone does not render a witness incompetent. *See State v. Manlove,* 79 N.M. 189, 441 P.2d 229 (Ct. App.), *cert. denied,* 79 N.M. 159, 441 P.2d 57 (N.M. 1968). Children are competent to testify when they "have a basic understanding of the difference between telling the truth and lying, coupled with an awareness that lying is wrong and may result in 'some sort of punishment.'" *State v. Hueglin,* 130 N.M. 54, 58, 16 P.3d 1113, 1117 (Ct. App. 2000) (citation omitted) (victim of criminal sexual penetration with Downs Syndrome and six-year-old mental capacity competent to testify). The trial judge adopted the State's position in state habeas that the "child-witnesses were able to understand the oath, the importance of telling the truth and were able to recall facts and testify in detail to the jury." *Exh. M* at 5-6. Again, these factual findings are wholly unrebutted, *see* 28 U. S. C. § 2254 (e)(1), and dispositive of the claim.

## (2) Expertise of Doctors

Petitioner argues that his attorney failed to "object to the doctors who had no expertise in child abuse." However, the docketing statement shows that the defense called its own doctor, "a licensed psychologist with a specialty in sex therapy." *Exh. D* at 6. The State's expert, "a psychologist with UNM Children's Hospital," had testified that the victim's post-traumatic stress

syndrome "was consistent with sexual abuse." *Id.* at 3. The defense challenged that conclusion on cross-examination by eliciting the admission that other factors can cause the syndrome and questioning the witness "about the stressful incidents in the victim's background." *Id.* at 3. The defense expert testified it would be "unusual" to find a severe manifestation of the syndrome in someone with "experiences like the victim . . . had." *Id.* at 6. Thus, counsel directly challenged the State's expert in cross-examination and by its own expert who specialized in the area in question. Accordingly, this claim is baseless.

### (3) Videotape & Victim's Mother

The victim had been interviewed at a "safe house" and the interview was videotaped. As the New Mexico Court of Appeals noted, the tape was not admitted into evidence. *Exh. H* at 19. Defense counsel originally wanted to "use and play portions of the victim's video safe house tape before the jury . . . for impeachment purposes" because "the victim's testimony in the safe house interview tape was different than what she stated at trial." *Exh. D* at 3. Specifically, on the tape "she never mentioned that the Defendant's penis went into her butt." *Id.* Defense counsel only wanted to use portions of the tape because the tape also "contained prejudicial matters which included gang references, references to other sexual misconduct performed on the victim by other persons, and references to other sexual misconduct which the Defendant was not on trial for." *Id.*

During a break, defense counsel and the prosecutor reviewed the tape. The State took the position that, if used, the jury should hear the entire videotape. *Exh. F* at 21. The trial judge apparently concurred, and defense counsel did not play the tape during his cross-examination of the victim. *Id.* at 7. He did, however, refer to the tape by asking her about "her testimony in the safe house tape" if she recalled failing to mention anal penetration. *Exh. D* at 3.

After the prosecution's case concluded, defense counsel changed his mind and asked to play the tape in its entirety during the defense's case. The State objected on the ground that with the witness now excused, there was no one to introduce the tape. Defense counsel did not pursue the matter further. *Exh. F* at 7.

Appellate counsel argued that failure to use the tape to impeach the victim constituted ineffectiveness because the credibility of the victim was key to the prosecution. *Id.* at 21. In response, the state argued that there "may" have been tactical reasons for counsel not playing the tape during cross-examination, specifically not wanting to reinforce the victim's testimony. *Exh. G* at 16-17. The Court of Appeals agreed, holding:

> Because the trial court ruled that the entire videotape of the interview must be shown, not simply selected extracts as the defense had requested, we cannot say that failure to use the tape prejudiced Defendant. Playing the entire videotape during cross-examination could have reinforced the child's testimony rather than impeached it. Under those circumstances, it would not have been unreasonable for Defendant's trial attorney to make a strategic decision not to show the tape. Because the tape was not admitted into evidence, it is not possible for us to evaluate its effect had it been introduced. . . . Defendant cross-examined the child about what she had said during her interview at the safe house and about inconsistencies in her account of the incidents. Moreover, even if the trial attorney's failure to introduce the tape fell below the level of a reasonably competent attorney, given the child's testimony and the testimony of her stepbrother, Defendant has failed to show that the outcome of he trial would have been different had he introduced the entire videotape of the child's interview at the safe house.

*Exh. H* at 18-19 (citation omitted).

The portion of the tape counsel wanted the jury to see was of the limited value. Conversely, the detrimental value defense counsel assigned to other portions of the tape, beyond the fact of reinforcing the children's testimony, is patent. For these reasons, like the Court of

Appeals, I find that counsel's failure to use the tape during cross-examination or to pursue alternative arrangements to have it introduced in during the defense evidence was understandable as opposed to "completely unreasonable."

Petitioner also argues for the first time in federal habeas that counsel was ineffective in failing to impeach the victim's mother by inquiring about a history of abuse by the victim's father. As noted earlier in connection with the *Brady* issue, Defendant's assault of the victim is not inconsistent with his bald allegation that the victim's father also did so. Thus, counsel's failure to follow that line of questioning is also not "completely unreasonable."

Moreover, in light of the discussion of the sufficiency of the evidence above, I also find that counsel's failure to introduce the videotape or impeach the victim's mother does not undermine the confidence in the outcome and that the Court of Appeals decision is not unreasonable or contrary to *Strickland.*

### E. IAOC – Jury Instructions

As he did in the state habeas proceedings, Gurule claims counsel "failed to request a lesser-included instruction." *Doc. 1* (Claim 1, ¶ 14); *see also Exh. K* (Claim 2, ¶ 14). However, the record demonstrates that counsel did request a lesser-included instructions, which were denied by the trial court and upheld on direct appeal. *See Exh. H* at 4-7. He also claims in conclusory fashion, that counsel failed to "object to ambiguous jury instructions." *Doc. 1* (Claim 5, ¶ 2). Again, conclusory allegations are insufficient. *Humphreys,* 261 F.3d at 1022 n.2. I therefore find these claims without merit.

## VI. Sentence Issues

For his final claims, Petitioner takes the position that his sentences for criminal sexual

penetration cannot run consecutively without running afoul of double jeopardy and that the resulting sentence was so disproportionate as the amount to cruel and unusual punishment. He contends counsel was ineffective in failing to make these arguments. *Doc. 1* (Claim 1, ¶¶ 1, 3, 7); *id.* (Claim 2, ¶¶ 1-3). Similar issues were raised in state habeas, *see Exh. K* (Claim I, ¶¶ 1,3), to which the State responded that the sentence was reasonable in light of the offenses and Gurule's risk of reoffending. *See Exh. M* at 4.

Double Jeopardy is not implicated because each act of penetration was discrete, occurring on different days and in different places. As such the conduct was not unitary and, under New Mexico law, can be punished as separate offenses. *E.g., Herron v. State,* 111 N.M. 357, 361, 805 P.2d 624, 628 (N.M. 1991) (CSP); *State v. Williams,* 105 N.M. 214, 217, 730 P.2d 1196, 1199 (N.M. Ct. App. 1986) (CSC); *see also Bernal v. Lytle,* 125 F.3d 861, 1997 WL 622774 **3-4 (10th Cir. 1997) (unpublished) (applying New Mexico law and finding no double jeopardy violation for discrete acts of penetration during commission of kidnapping), *cert. denied,* 522 U.S. 1151 (1998); *Exh. H* at 5-6 ("the evidence presented by the State supported two separate offense, CSC and CSP, occurring at different times. . . . Therefore, the record does not support a reasonable view of the evidence by which a jury could reasonably have found a lesser-included offense of CSC in response to the CSP charges.").

In addition, as the Tenth Circuit recently noted in unpublished opinions:

> It is well-established that courts may constitutionally impose
> consecutive sentences for completely distinct and separate offenses.
> *See O'Neil v. Vermont,* 144 U.S. 323, 331 (1892) ("[i]f [the
> defendant] has subjected himself to a severe penalty, it is simply
> because he committed a great many such offenses").  Mr.
> Woodberry provides no allegations demonstrating an equal
> protection violation, a lack of procedural or substantive due
> process, or an imposition of involuntary servitude.  Because he has
> failed to make a substantial showing of the denial of a constitutional
> right, we deny COA on this issue.

*Woodberry v. Hannigan,* 37 Fed.Appx. 404, 2002 WL 568186 *1 (10th Cir. 2002).

> [T]he district court recognized that Eighth Amendment analysis
> "focuses on the sentence imposed for each specific crime,  not the
> cumulative sentence for multiple crimes.". . .   Since Mr. Payne
> admitted that none of his individual sentences exceeded the
> statutory maximum, the Oklahoma Court of Criminal Appeals
> reasonably rejected Mr. Payne's argument that the 502 year
> sentence violates the Eighth Amendment prohibition upon "cruel
> and unusual punishment[ ]."

*Payne,* 2001 WL 1334701 *2.

Having identified no constitutional violation, and there being no basis to find counsel ineffective, I find these remaining issues without merit.  I do note, however, that according to my calculations, the arithmetic in the judgment and sentence appears to be overstated by seven years. This ministerial matter is not grounds for habeas relief, and I trust that if my math is accurate, the state will correct the matter.

Wherefore,

**IT IS HEREBY RECOMMENDED THAT:**

1.      The petition *(Doc. 1)* be DENIED;

2.      Petitioner's motions for appointment of counsel *(Docs. 3, 12)* be DENIED; and

3.      This action DISMISSED WITH PREJUDICE.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 10 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the ten-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

_____
UNITED STATES MAGISTRATE JUDGE